UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| MEROUANE LAKEHAL-AYAT, | DECISION AND ORDER |
| Plaintiff, | 18-CV-6916 CJS(MJR) |
| -v- | |
| ST. JOHN FISHER COLLEGE, et al., | |
| Defendants. | |

_____

## INTRODUCTION

This is an action alleging employment discrimination and retaliation. On October 15, 2021, the Honorable Michael J. Roemer, United States Magistrate Judge ("Judge Roemer"), issued a Decision and Order (ECF No. 48) addressing competing requests by the parties for production of documents. Now before the Court are Plaintiff's Objections (ECF No. 53) to that Decision and Order. For the reasons discussed below, the Objections are denied.

## BACKGROUND

The reader is presumed to be familiar with the facts of this action and the submissions of the parties detailing their discovery disputes (*See, e.g.*, ECF Nos. 43, 44 & 46). Briefly, Plaintiff maintains that his employment as a tenured college professor at St. John Fisher College ("the College") was illegally terminated due to discrimination, while Defendants maintain that his employment was properly terminated after he engaged in unethical behavior and academic misconduct. In either event, the process that led to Plaintiff's termination began when one or more of his former students at the College complained about him leading to an investigation by the College's Human Resources Department. The Department provided a report to the College's Tenure Committee, which then instituted dismissal proceedings against him. A Hearing Committee then conducted hearings and issued a report to the College's Board of Trustees, which revoked Plaintiff's tenure and terminated his employment. Plaintiff maintains that this process was retaliatory, discriminatory, and not in accordance with the College's own rules, procedures and contractual obligations.

Plaintiff's Third Amended Complaint (ECF No. 15) purports to state six causes of action:  1) unlawful discrimination under federal law; 2) unlawful discrimination under New York State law; 3) retaliation under federal law; 4) retaliation under New York State law; 5) age discrimination and retaliation; and 6) breach of contract.

Defendants' Answer (ECF No. 18) generally denies Plaintiff's allegations and asserts twenty-one affirmative defenses: 1) failure to state a claim; 2) statute of limitations; 3) Defendants' action were in good faith and in accordance with law and regulations, and Defendants had reasonable grounds to believe their actions did not violate the law; 4) failure to mitigate damages or suffer economic loss; 5) any damages were the result of acts or omissions of Plaintiff or third parties; 6) Defendants were not aware of and did not condone the complained-of acts; 7) Plaintiff did not satisfy statutory prerequisites to sue under Title VII or the ADEA; 8) Defendants' action were in good faith and not motivated by discriminatory or retaliatory animus; 9) accord, satisfaction, estoppel and/or waiver; 10) Defendants would have taken same actions regardless of Plaintiff's alleged protected activity or status; 11) Plaintiff did not engage in protected activity; 12) Defendants did not aid, abet, ratify, condone, approve, encourage or acquiesce in any discriminatory or harassing conduct; 13) Plaintiff is not entitled to damages, front pay or attorney's fees; 14) doctrine of unclean hands; 15) statute of frauds; 16) claims under New York Human Rights Law are barred by New York Worker's Compensation Law; 17) failure to fulfill contractual conditions precedent; 18) Plaintiff's claims are barred and/or limited by after-acquired evidence; 19) *Faragher Ellerth* defense; 20) Plaintiff's damages are capped by Title VII; and 21) Defendants' actions were in good faith and for legitimate, non-discriminatory and non-retaliatory reasons.

After Plaintiff commenced this action, he sought production of written communications between the College's counsel and the faculty members who were involved in the investigation and hearing process.  Defendants maintain that such communications are privileged, while Plaintiff insists that the privilege is waived, since Defendants are raising defenses that may involve those communications. Specifically, Plaintiff contends that Defendants' Third, Sixth, Eighth, Tenth, Twelfth, Nineteenth and Twenty-First Affirmative Defenses "place their internal investigation squarely at issue," and that "[t]o evaluate the

validity of such defenses, Plaintiff is permitted to review all documents and communications related to Defendants' internal investigations and decision-making processes involved in this matter."[1]

Defendants, meanwhile, sought production of written communications (emails) sent by students and other unrepresented third-party witnesses to Plaintiff and his counsel in connection with the hearing process. Defendants maintain that such communications either were not privileged or that Plaintiff waived the privilege. Plaintiff, though, insists that the communications are protected as attorney work product and that the privilege was not waived.

In August 2021, Defendants' counsel notified Judge Roemer, by six-page letter (ECF No. 43), that the parties were unable to resolve their discovery disputes informally. Regarding the communications from third parties to Plaintiff's counsel, Defendants attached Plaintiff's Privilege Log as an exhibit, and specifically referenced the following sixteen entries as failing to qualify for the work-product privilege: 1, 2, 11, 13, and 32–43. An examination of those entries indicates that the sixteen documents are emails sent by a total of three third-party witnesses to either Plaintiff (1), Plaintiff's counsel (2, 32–43), or other third parties with Plaintiff and/or his counsel copied in (11, 13). The bulk of the emails (32–43) are from one of the three third parties. The descriptions of the emails suggest that they all convey factual information obtained by the third parties, relating to Plaintiff's dispute with the College. None of the entries indicate that the emails were responsive to correspondence sent by Plaintiff's counsel, or that they related to proposed testimony by the sender or to the preparation of an affidavit by the sender.[2]

Defendants asserted to Judge Roemer that the sixteen documents are not protected by the attorney work-product doctrine for essentially three reasons: 1) communications sent by third-parties to counsel are generally not considered attorney work product; 2) Plaintiff's privilege log does not indicate that the communications contain attorney work product, *i.e.*,

---

[1] ECF No. 44 at pp. 6–7.

[2] *But see,* ECF No. 44 at p. 5 (Plaintiff's letter brief to Judge Roemer, asserting that the emails "concern the substance of the witnesses' testimony and/or the questions that Plaintiff's counsel intended to ask witnesses during the hearing.").

counsel's opinions or strategies; and 3) even if the communications contained work product, Plaintiff waived the privilege by disclosing such work product to third parties.

Defendants maintained, on the other hand, that their counsel's communications with members of the Hearing Committee are protected by the attorney-client privilege, and that such privilege has not been waived, since Defendants were not relying on the privileged communications to establish their affirmative defenses. *See*, ECF No. 43 at p. 4 ("[T]o establish a waiver of privilege, Plaintiff must demonstrate Defendants' *relied* on the privileged communications . . . in support of their claims or defenses, which he cannot do here.") (emphasis in original). Indeed, Defendants clearly disavowed any intention of relying on the privileged communications to establish their affirmative defenses. *See, Id*. at 6 ("[T]he College has not put the privileged communications 'at issue' in this litigation and it does not intend to rely upon those privileged communications as part of its defense in this action.").

Plaintiff responded with a nine-page letter (ECF No. 44) to Judge Roemer, agreeing that the parties were at an impasse and disputing Defendants' legal arguments. Regarding Defendants' claim of attorney-client privilege, Plaintiff acknowledged that the communications were privileged, but argued that Defendants had waived the privilege, since several of their affirmative defenses allege that they acted reasonably and in good faith during the hearing process. Additionally, Plaintiff asserted that Defendants had committed numerous procedural violations during the hearing process, suggesting that they had not acted in good faith, which further entitled him to discovery of all communications between Committee Members and counsel.

Plaintiff argued, however, that the emails from third-parties to himself or his counsel were protected by the attorney work-product doctrine. (ECF No. 44 at p. 1) ("[C]ommunications between Plaintiff (or his counsel) with Plaintiff's students, former students, and/or other non-party witnesses for the purpose of gathering information related to this matter and preparing witness statements are protected by the attorney work-product doctrine."); *see also, id*. at p. 5 ("[C]ommunications with key non-party witnesses for the purpose of soliciting information that will be used in the witnesses' testimony are protected."). Plaintiff further contended that while communications from third-parties to an attorney may

4

not typically qualify as attorney work product, an exception applies where a confidential relationship exists, and that he and his attorney had a "confidential relationship" with the third-party witnesses "in the sense that these witnesses had indicated their desire to support Plaintiff in his ongoing dispute with the College." *Id*. Plaintiff also disputed the notion that his attorney could have waived the privilege by revealing his work product to the third-party witnesses, asserting that the witnesses were not likely to disclose any such information to the College.

Defendants then submitted a six-page reply letter (ECF No. 46) to Judge Roemer, reiterating their prior arguments and disputing Plaintiff's contentions. Defendants maintained, for example, that the vast majority of the caselaw in this Circuit holds that communications between a party's attorney and third parties are generally not protected as attorney work product, and that the cases cited by Plaintiff are inapposite, since, for example, the statements sent by the non-parties to Plaintiff's counsel related to the College's hearing process and not litigation. Defendants also insisted that Plaintiff did not have a shared common legal interest with the third-party witnesses sufficient to avoid waiver of the work-product privilege. Defendants further indicated that they had not waived the attorney-client privilege since they were not relying on the protected communications to establish their affirmative defenses. *See, e.g.*, ECF No. 46 at p. 4 ("Defendants put the investigation itself, and not any given privileged material, at issue in this case."). Defendants pointed out that Plaintiff cannot essentially "manufacture" the waiver of attorney-client privilege in this setting by merely challenging whether Defendants acted reasonably and/or in good faith.

In response to this correspondence, Judge Roemer issued a text order (ECF No. 45) scheduling a "discovery hearing." On August 24, 2021, Judge Roemer conducted such a hearing, with counsel participating by videoconference, and afterward made a minute entry to the docket indicating in pertinent part, "Discovery Hearing regarding discovery disputes held on 8/24/2021. The Court to issue decision and order." (ECF No. 47).

Subsequently, on October 15, 2021, Judge Roemer issued a Decision and Order (ECF No. 48), ruling in Defendants' favor as to both discovery disputes. First, Judge Roemer found that Plaintiff's counsel's communications with students and other unrepresented third parties

did not qualify as attorney work product and must be disclosed, observing that communications from non-parties to counsel in a lawsuit generally do not qualify as such, and that communications from counsel to such persons containing work product would waive the privilege as to any attorney work product contained therein.

Next, Judge Roemer ruled that Defendants were not required to disclose communications between the College's counsel and Hearing Committee members relating to the disciplinary proceedings against Plaintiff, since "[a]ny such communications between counsel and the Committee are clearly protected by the attorney client-privilege because they concern the interpretation and application of procedural rules under the Faculty Statutes."

Further, Judge Roemer found that Plaintiffs had not shown that Defendants waived the attorney-client privilege by "relying on the privileged communications concerning the investigation or the Hearing Committee's proceedings as a defense in this case."[3]  On this point, Judge Roemer wrote:

> Here, the College is not relying on the privileged communications at issue as a defense in this case.  For example, it is not asserting any type of "good faith" affirmative defense based on counsel's advice.  Neither the fact that the Board of Trustees relied upon the *conclusions* reached by the investigation into Plaintiff's misconduct nor the fact that it took the Hearing Committee's *findings* into consideration (per the Faculty Statutes) as part of its decision making opens up to discovery privileged attorney-client  communications related to the details of those underlying matters.

ECF No. 48 at p. 6; *see also, id*. at p. 7 ("[T]he privilege has not been waived as the College has not put the privileged communications 'at issue' in this case.").

In response, Plaintiff filed the subject objections to Judge Roemer's Decision and Order, pursuant to Fed. R. Civ. P. 72(a).  Plaintiff first raises a procedural objection, asserting that Judge Roemer should not have issued a Decision and Order based on what was an informal attempt by the parties to resolve their discovery disputes, since in doing so he deprived Plaintiff of the right to file a formal motion to compel, in addition to violating both the Local Rules of Civil Procedure and his own rules of practice.

---

[3] ECF No. 48 at pp. 5–6.

Plaintiff next alleges that the ruling concerning communications from third parties to his counsel was clearly erroneous and contrary to law insofar as it held that such communications are never protected by the work-product doctrine. Plaintiff alleges the ruling was similarly incorrect in holding that any disclosure of work product to a third party waives the privilege and in failing to recognize that communications between counsel and third parties containing attorney work product can, in certain circumstances, contain work product and still not waive the privilege. *See*, ECF No. 53 at p. 6 ("[T]he communications at issue in this case include not only communications from non-parties to Plaintiff's counsel, but also communications from Plaintiff's counsel to third parties for the purposes of conveying legal strategy, soliciting documents and information to assist in Plaintiff's legal dispute with Defendants, or both."); *see also, id*. at p. 7 ("[E]ven communications from third-party non-witnesses to a party's attorney may be protected by the work-product doctrine where the communication provides information requested by the attorney."). Plaintiff contends that in determining whether the privilege was waived, the relevant issue, which Judge Roemer did not discuss, is whether the disclosure to a third party made it more likely that the information would be communicated to an adversary in the litigation.

Plaintiff further maintains that Judge Roemer's Decision and Order was clearly erroneous and contrary to law insofar as it found that communications between Defendants' counsel and members of the Hearing Committee are protected by the attorney-client privilege, since several of Defendants' affirmative defenses turn upon whether Defendants acted reasonably and/or in good faith. *See*, ECF No. 53 at p. 10 ("When an employer puts the reasonableness of its internal investigation at issue, the employer waives any privilege that might otherwise apply to documents concerning that investigation."). Plaintiff contends that Judge Roemer should have ordered the disclosure of all such communications in this action, since the College's hearing process involved numerous procedural irregularities that call into question whether Defendants acted in good faith.

Defendants oppose Plaintiff's objections and contend, first, that Plaintiff's procedural objection should be denied for several reasons, including that he failed to object to Judge Roemer's intention to resolve the parties' discovery disputes by Decision and Order until after

he received the unfavorable ruling.  Defendants further maintain that the substantive rulings to which Plaintiff objects were neither clearly erroneous nor contrary to law.  Defendants indicate, for example, that communications by counsel to unrepresented third parties or vice versa are generally not protected by the work-product doctrine, and that Plaintiff has not shown that such communications in this case contained protected work-product.  Defendants also argue that while they are asserting certain defenses based on their purported reasonableness and good faith in handling Plaintiff's hearing process, those defenses do not rely on any protected communications with counsel, and the attorney-client privilege is therefore not waived.

## DISCUSSION

The subject objections are to a non-dispositive Decision and Order by a Magistrate Judge, and are therefore governed by Fed. R. Civ. P. 72(a), which states:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72.  This standard of review by the district judge is "highly deferential" to the magistrate judge's ruling, such that "[a] district court may reverse the order only if on the entire evidence, the district court is left with the definite and firm conviction that a mistake has been committed." *Klosin v. E.I. du Pont de Nemours & Co.*, 561 F. Supp. 3d 343, 348 (W.D.N.Y. 2021) (citation omitted); *see also, United States v. Town of Oyster Bay*, No. 14CV2317GRBLGD, 2022 WL 4485154, at *2 (E.D.N.Y. Sept. 27, 2022) ("An order is clearly erroneous if, based on all the evidence, a reviewing court is left with the definite and firm conviction that a mistake has been committed.  An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.  Under this highly deferential standard, magistrate judges are afforded broad discretion in resolving discovery

disputes, and reversal is appropriate only if that discretion is abused.  Therefore, a party seeking to overturn a discovery order by a magistrate judge bears a heavy burden.") (citations and internal quotation marks omitted).

### Plaintiff's Procedural Objection is Denied

The Court finds as a preliminary matter that Plaintiff's procedural objection must be denied.  As noted above, "[a] party may not assign as error a defect in the order not timely objected to," and Plaintiff did not make any timely objection to the procedures employed by Judge Roemer to resolve the discovery dispute.  In that regard, Plaintiff had the opportunity to submit a nine-page letter brief on the issues and then participated in oral argument, after which he was advised that Judge Roemer intended to issue a Decision and Order.[4]  Plaintiff, though, never objected Judge Roemer's manner of handling the dispute until two months later, after he had received the unfavorable ruling.  Accordingly, the Court finds that to the extent Plaintiff may have had any basis to object to the procedure followed by Judge Roemer,[5] he waived that objection by failing to raise it in a timely manner.  Nor has Plaintiff otherwise shown that Judge Roemer somehow prevented him from fully setting forth his legal arguments.  On that point, Plaintiff suggests that he was denied the opportunity to respond to arguments raised in Defendants' reply letter brief to Judge Roemer, but there is no indication he ever requested an opportunity to submit such a response.

### Plaintiff's Remaining Objections are Denied

Turning to the merits of Plaintiff's objections, the Court finds that Plaintiff has not carried his heavy burden of demonstrating that Judge Roemer's rulings were clearly erroneous or contrary to law.

*The Ruling concerning Attorney Work Product Is Not
Clearly Erroneous or Contrary to Law*

Beginning with the communications between Plaintiff's counsel and third parties, the legal principles concerning the work product privilege are well settled.  "A document is entitled

---

[4] Plaintiff's suggestion that Judge Roemer's handling of the matter in this manner was "due to an apparent oversight" seems clearly incorrect. *See*, ECF No. 53 at p.1).

[5] As mentioned earlier, Plaintiff contends that Judge Roemer violated the Local Rules of Civil Procedure and his own rules of practice.

to protection from disclosure as work product if it was created 'because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation.'" *Nat'l Ass'n for the Advancement of Colored People v. E. Ramapo Cent. Sch. Dist.*, No. 17CIV8943CSJCM, 2019 WL 12248031, at *2 (S.D.N.Y. Mar. 14, 2019) (*quoting United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998). "The work-product doctrine, codified for the federal courts in Fed.R.Civ.P. 26(b)(3), is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (citing *Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 393–94, 91 L.Ed. 451 (1947)). "The party asserting work product privilege bears the heavy burden of establishing its applicability and lack of waiver." *Sec. & Exch. Comm'n v. Xia*, No. 21CV5350PKCCLP, 2022 WL 377961, at *2 (E.D.N.Y. Feb. 8, 2022) (citation omitted).

"[C]ommunications from non-parties to counsel for parties in a lawsuit generally do not qualify as attorney work product." *Carpenter v. Churchville Greene Homeowner's Ass'n*, No. 09-CV-6552T, 2011 WL 4711961, at *10 (W.D.N.Y. Sept. 29, 2011) (collecting cases), *report and recommendation adopted sub nom. Carpenter v. Churchville Greene Homeowner's Ass'n, Inc.*, No. 09-CV-6552, 2011 WL 6012539 (W.D.N.Y. Dec. 1, 2011).

"Ordinarily, voluntary disclosure of an otherwise privileged document to a third party waives privilege." *Sec. & Exch. Comm'n v. Alderson*, 390 F. Supp. 3d 470, 479 (S.D.N.Y. 2019) (citing *In re Grand Jury Proceedings*, 219 F.3d 175, 184 (2d Cir. 2000)). However, such disclosure does not automatically waive the privilege. *See, e.g., Nat'l Ass'n for the Advancement of Colored People v. E. Ramapo Cent. Sch. Dist.*, No. 17CIV8943CSJCM, 2019 WL 12248031, at *4 (S.D.N.Y. Mar. 14, 2019) ("Unlike the attorney-client privilege, work product protection is not automatically waived by disclosure to third parties.").

> Privilege is waived where disclosure of protected work product to the third party is "inconsistent with maintaining secrecy against opponents or substantially increases the opportunity for a potential adversary to obtain the protected information." *In re Terrorist Attacks on September 11, 2001*, 293 F.R.D. 539, 544 (S.D.N.Y. 2013) (quoting *Ricoh Co. v. Aeroflex, Inc.*, 219 F.R.D. 66, 70 (S.D.N.Y. 2003)). Accordingly, "even disclosure to non-adversaries waives

>work product protection if it materially increases the likelihood that an adversary can gain access to that information." *Id*. (citing *Costabile v. Westchester, N.Y.*, 254 F.R.D. 160, 164 (S.D.N.Y. 2008)). This practical approach to waiver of work product privilege prevents a party from "meet[ing] with a non-party witness, show[ing] him documents and ask[ing] him questions, and then mask[ing] the entire preparation session in the cloak of work product protection." *Gupta*, 281 F.R.D. at 173.

*Sec. & Exch. Comm'n v. Xia*, No. 21CV5350PKCCLP, 2022 WL 377961, at *2 (E.D.N.Y. Feb. 8, 2022) (some citations omitted).

As alluded to in the preceding quotation, the purpose of this rule is that, where a party has communicated with a third-party witness in preparation for that witness providing testimony in a matter, the opposing party should be entitled to inquire into the extent to which, if at all, the witness was coached or influenced. *See, Patane v. Nestle Waters N. Am. Inc.*, No. 3:17-CV-1381 (JAM), 2022 WL 6569823, at *2 (D. Conn. Oct. 4, 2022) ("As Judge Rakoff observed when addressing a party's sharing of work product with a third-party witness in preparation for his deposition by the opposing party: "The ability of a party to meet with a non-party witness, show him documents and ask him questions, and then mask the entire preparation session in the cloak of work product protection would serve to facilitate even the most blatant coaching of a witness if it could not be the subject of inquiry. To allow the invocation of work product protection to succeed in such circumstances would leave the party taking a deposition with no remedy to determine how, if at all, a witness's testimony was influenced, not by advice from the witness's own counsel, but by suggestions from the questioner's adversary....") (quoting *S.E.C. v. Gupta*, 281 F.R.D. 169, 173 (S.D.N.Y. 2012)).

Notably, "[c]ourts in this Circuit have held that disclosure to a third-party witness in the action waives privilege where the witness does not share a common interest with the disclosing party." *Sec. & Exch. Comm'n v. Xia*, No. 21CV5350PKCCLP, 2022 WL 377961, at *3 (E.D.N.Y. Feb. 8, 2022) (citation omitted).

In this action, Judge Roemer held that communications sent by the non-parties to Plaintiff's counsel did not qualify as protected attorney work product, and that to the extent the communications sent by his attorney to the students contained work product, the privilege was waived. Plaintiff, though, contends that the attorney work-product privilege applies, since

his attorney sought information from the students relating to their potential testimony at a hearing, and that the privilege was not waived since the students shared a common interest with Plaintiff insofar as they wanted him to prevail at the hearing and remain employed by the College.

As for whether the particular communications at issue here qualify as work product, Plaintiff has relied heavily, in both his letter brief to Judge Roemer and in his Objections to this Court, on the case of *Carpenter v. Churchville Greene Homeowner's Ass'n*, No. 09-CV-6552T, 2011 WL 4711961 (W.D.N.Y. Dec. 1, 2011) ("*Carpenter*"), in which written communications between a party's counsel and a third party, concerning revisions to an affidavit from the third party that was to be filed with a court, were treated as attorney work product. Plaintiff also cites, *inter alia*, *Ricoh Co., Ltd. v. Aeroflex, Inc.*, 219 F.R.D. 66,69 (S.D.N.Y. 2003) ("*Ricoh*") for the proposition that communications sent by a third party to a party's attorney might qualify as work product if the third party has a confidential relationship with the party.[6]

However, the Court does not find that Plaintiff has shown Judge Roemer's ruling to be clearly erroneous or contrary to law insofar as it found the communications do not qualify as protected attorney work product. The Court notes, for example, that the *Carpenter* decision is factually inapposite, since the communications here, between Plaintiff's counsel and the third-party students, evidently did not involve the preparation or revision of affidavits to be submitted in litigation. *See, Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. AP 08-01789 (SMB), 2017 WL 4685525, at *5 (Bankr. S.D.N.Y. Oct. 17, 2017) ("On the one hand, communications from non-parties to counsel for parties in a lawsuit do not generally qualify as work product. On the other hand, the work product protection generally extends to an attorney's communications with a third party witness relating to the party's completion of the affidavit.") (citation omitted). Nor has Plaintiff otherwise shown why the subject communications clearly fall under some exception to the general rule that communications between counsel and third parties are not protected by the attorney work-product doctrine.

---

[6] Otherwise, Plaintiff urges the Court to disregard the *Ricoh* decision as being "an outlier." ECF No. 53 at p. 7.

Similarly, with regard to waiver, the aspect of the *Ricoh* decision on which Plaintiff relies is inapposite, since Plaintiff has not demonstrated the existence of a confidential relationship between himself and his students; rather, he merely indicates that the students with whom his attorney communicated claimed to want to "support him" in his dispute with the College.  Given this seemingly tenuous shared "common interest" between Plaintiff and his students, the Court fails to see why it would have been clearly reasonable for Plaintiff to believe that any disclosure of attorney work product by him to such students would remain confidential.  That is, to the extent any communications by Plaintiff's counsel contained work product, Plaintiff has not shown how such disclosure was consistent with maintaining secrecy, nor has he demonstrated that he shares a common legal interest with the third-party student witnesses sufficient to avoid waiver of any work-product privilege. *See*, *Marciano v. Atl. Med. Specialities, Inc.*, No. 08-CV-305-JTC, 2011 WL 294487, at *4 (W.D.N.Y. Jan. 27, 2011) ("While Mr. Fowler has apparently aligned himself with Mr. Crowley and AMS, disclosure of the e-mails to Mr. Fowler, a third-party with no legal interest in the ongoing litigation, increases the risk that the documents could end up in the hands of a potential adversary.").

*The Ruling Concerning Attorney-Client Privilege is Not*
*Clearly Erroneous or Contrary to Law*

Plaintiff further contends that Judge Roemer's Decision and Order is clearly erroneous and contrary to law insofar as it found that Defendants did not waive the attorney-client privilege, as to counsel's communications with Committee Members and/or College faculty, by relying on the communications to prove that they acted reasonably and in good faith.  Plaintiff essentially argues that since Defendants' good faith is at issue, he's entitled to see all communications that might bear on that point.  However, Judge Roemer found no waiver, since Plaintiff had not shown that Defendants were relying upon the actual privileged communications to establish their affirmative defenses.

The general legal principles applicable to "at-issue waiver" or "implied waiver" under these circumstances are well settled:

> The attorney-client privilege is one of the "oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States*, 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998). Its purpose is to "encourage full

and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Id*. at 403, 118 S.Ct. 2081 (internal quotation marks omitted). Therefore, rules which result in the waiver of this privilege and thus possess the potential to weaken attorney-client trust, should be formulated with caution. Generally, "[c]ourts have found waiver by implication when a client testifies concerning portions of the attorney-client communication, ... when a client places the attorney-client relationship directly at issue, ... and when a client asserts reliance on an attorney's advice as an element of a claim or defense...." *Sedco Int'l S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir.1982). The key to a finding of implied waiver in the third instance is some showing by the party arguing for a waiver that the opposing party relies on the privileged communication as a claim or defense or as an element of a claim or defense. The assertion of an "advice-of-counsel" defense has been properly described as a "quintessential example" of an implied waiver of the privilege. *See In re Kidder Peabody Secs. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y.1996).

\*\*\*

[T]he assertion of a good-faith defense involves an inquiry into state of mind, which typically calls forth the possibility of implied waiver of the attorney-client privilege.

\*\*\*

Underlying any determination that a privilege should be forfeited is the notion of unfairness. This notion implicates only "the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." *John Doe Co*., 350 F.3d at 306. And we have made it clear that "[w]hether fairness requires disclosure has been decided ... on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." *In re Grand Jury*, 219 F.3d at 183.

\*\*\*

[However,] [a] mere indication of a claim or defense certainly is insufficient to place legal advice at issue.

\*\*\*

[There must be the] essential element of reliance on privileged advice in the assertion of the claim or defense in order to effect a waiver. . . . [A] party must rely on privileged advice from his counsel to make his claim or defense.

*In re Cnty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008).

Some district courts in this Circuit have held that "forfeiture of the privilege may result where the proponent asserts a good faith belief in the lawfulness of its actions, even without expressly invoking counsel's advice." *Sec. & Exch. Comm'n v. Honig*, No. 18 CIV. 8175 (ER), 2021 WL 5630804, at *11 (S.D.N.Y. Nov. 30, 2021) (citation omitted, collecting cases). However, as one court has explained, the question of waiver on that basis is case-and-fact-specific:

> While a party is not required to explicitly assert "reliance on counsel" to put evidence protected by the attorney-client privilege at issue, "[n]either, however, does every claim of good faith open up inquiries into privileged communications," because "[n]ot every assertion of good faith implicates the legal understanding of the party making the claim." *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, No. 93 Civ. 1317 (LMM) (RLE), 1996 WL 173138, at *3–4 (S.D.N.Y. Apr. 12, 1996) (finding no waiver of privilege where defendant's affirmative defense was based on defendant's knowledge of facts, not knowledge of law); *see, e.g., 2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assurance Co.*, No. 12 Civ. 6808 (KMK) (PED), 2016 WL 1060336, at *2 (S.D.N.Y. Mar. 11, 2016) ("post-*Erie* caselaw confirms that such implied reliance is confined to situations involving a party's state of mind concerning a question of law, such as the party's belief as to the lawfulness of its conduct") (finding no forfeiture of privilege where plaintiff invoked facts he knew or should have known, not his state of mind concerning question of law).

*Sec. & Exch. Comm'n v. Honig*, 2021 WL 5630804, at *12; *see also, Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 1996 WL 173138, at *4 ("Whether the claim or defense asserted by a party implicates its knowledge of the law or its knowledge of the facts is the crucial inquiry on the question of implied waiver."); *Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, No. 18CV4921PGGKHP, 2021 WL 1930294, at *5 (S.D.N.Y. May 13, 2021) ("[T]he Second Circuit has not squarely addressed the degree of reliance necessary to trigger an at-issue waiver of otherwise privileged material. *See In re County of Erie*, 546 F.3d at 229 ("[w]e decline to specify or speculate as to what degree of reliance is required"). Accordingly, the Court must determine, based on the facts of *this* case, whether MiMedx's reliance on the investigation reports and/or its assertion of good faith ought to render related attorney-client communications concerning litigation strategy discoverable.") (emphasis in original).

Here, while Judge Roemer's analysis of this issue was relatively brief, the Court declines to find that it was clearly erroneous or contrary to law, merely because Defendants have pleaded affirmative defenses that on their faces suggest potential waiver of the privilege. *See, Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, 2021 WL 1930294, at *2 ("Merely pleading a claim or defense does not operate as a waiver of all protected information relevant to the claim or defense—unless the party asserting the privilege relies, to some extent, on the protected information to advance that claim or defense."). However, the question of Defendants' implied waiver of the attorney-client privilege could be revisited if it later becomes apparent upon further development of the record that Defendants are, contrary to what they now represent,[7] pursuing defenses that implicate their knowledge of the law and/or their reliance on particular communications with counsel. *See*, Defs.' Resp. to Pl.'s Obj's, ECF No. 54 at p. 17 ("Plaintiff's request is, at best, premature.").

CONCLUSION

Plaintiff's Objections (ECF No. 53) are denied. Pursuant to Judge Roemer's text order (ECF No. 56) issued on January 28, 2022, "[a]ll case management order deadlines are extended 90 days" from the date of this Decision and Order.

SO ORDERED.

Dated: Rochester, New York
December 15, 2022

ENTER:

*Charles J. Siragusa*
CHARLES J. SIRAGUSA
United States District Judge

---

[7] *See*, Defs.' Resp. to Obj's, ECF No. 54 at p. 14 ("Here, the College simply has not (and will not) submit any evidence to this Court in which it relies upon the advice of its counsel to support its claims or defenses in this action[.]")